JOHN L. ELLIOTT, FRANCES O. ELLIOTT AND BENJAMIN S. CAULK,

*vs.*

THE COUNCIL OF NEWARK.

*New Castle, March T.*, 1896.

Where a town charter provided that the Council should "meet at least once in every month at such time or times or place as it shall appoint," and that "special meetings may be called by the president of the Council upon his own motion or shall be called at the request of three members;" and contained no provision relating to the passage of ordinances, except that "no ordinance shall be passed without the concurrence of a majority of the members of the Council unless it shall have had at least two readings at a previous stated meeting or meetings;" *held* that an ordinance may be adopted at a special meeting, having been read twice at the last previous stated meeting, when from the call for the special meeting it may be fairly understood that the passage of the ordinance was one of the purposes or objects for which the special meeting was called.

A provision in a town charter that the secretary "shall have in his charge the ordinances, which shall be recorded in a book or books provided by the Council for that purpose and called 'Ordinances' " is directory merely, and a delay, on the part of the secretary for four years in recording the ordinance in no way affected its validity.

Where a town charter provided that the Associate Judge resident in the county should have jurisdiction in cases of appeals from the allowance of damages by the Council for widening streets, a general statute authorizing the Chief Justice or any Associate Justice to act in the place of the Associate Justice resident in the County during his absence or disability; *held*, that a general provision of this nature cannot be considered an amendment to the charter of a municipality. It belongs to that class of cases which regulate the forms of administering justice by the courts. It is intended solely to facilitate the dispatch of business by the courts

and is an incident of sovereignty presumed to be reserved in the enactment of all charters.

Where a town charter authorized not only the laying out of new streets, but the widening of streets already opened, but made no provision for the condemnation of land necessary for the widening of such streets, and an ordinance was passed widening a street; and subsequently to the passage of the ordinance the power of condemnation was conferred by an amendment to the charter; *held*, that the whole power of the Council at the time, was exercised by its adoption of the ordinance, which had the same effect as a statute fixing the width of the street; and when the power to exercise the right of eminent domain was subsequently conferred, condemnation proceedings regularly instituted and carried through were valid and effective.

INJUNCTION BILL.—The complainants were owners of land in the town of Newark, in New Castle County, who sought to restrain the Council of Newark from taking portions of their land under the power of eminent domain for the purpose of widening a street. The Council, under the town charter, assessed the damages and from that assessment the complainants appealed by filing an application in writing to Chief Justice Lore for the appointment of freeholders to assess the damages. The application to the Chief Justice was made upon the theory that he had jurisdiction of the matter under the statute by reason of the absence from the State of the resident judge of the county. The commissioners appointed by the Chief Justice made awards and afterwards, the complainants being dissatisfied therewith, upon notice to the president of the Council, made an application to the Associate Judge resident in New Castle County for the appointment of commissioners, they having then adopted the theory that in the resident Judge alone was vested the power to act in the premises.

The application to the resident Judge was not acted upon and the town Council partially entered upon the premises in question, and were notified by the complainants, through their counsel, that they were trespassing. This notice having proved ineffectual, the bill was filed and a preliminary injunction applied for.

The prayers of the bill were for answer, injunction, further relief and subpoena.

An answer was filed by the respondents, the Council of Newark, in the month of September, but subsequently an agreement of counsel was entered into and filed on January 15, 1896, setting forth an agreed statement of facts to stand in the place of bill, answer and proofs.

The statement set forth the following facts:

1. The ownership by the complainants of the land in question.

2. That the respondent had determined to widen Main street in the town of Newark on, over and through the said lands, and that on May 24, 1895, did serve upon the complainants notice of their intention to take the land, with a description of what was to be taken, and a statement that "after duly considering the matter, the Council has awarded the sum of $310 for damages sustained." The complainants being dissatisfied, having on June 1, 1895, served written notice upon the president of the Council to that effect, did, on June 12, 1895, make application in writing to the Honorable Charles B. Lore, Chief Justice, for the appointment of five freeholders to go upon the lands and assess the damages.

3. That the Chief Justice, upon said application, appointed the freeholders.

4. That on July 11, 1895, the freeholders went upon the land and assessed the damages to the complainants, John L. Elliott and Frances Elliott, in right of the latter, at the sum of $206.66, and to the respondent, Benjamin S. Caulk, the sum of $103.34, and the commissioners did so certify their return to the Chief Justice.

After the return of the commission the respondent exercised the option to pay the damages and instructed the treasurer of the town to do so, and also decided to proceed with the improvements and work of widening the street, and on July 17, 1895, the treasurer of the town duly tendered the sums of money so assessed.

5. The Council entered upon and occupied a part of the lands "without the consent and against the will of the complainants," and "intends to and will, unless restrained therefrom by the Chancellor, further enter upon and occupy" the said lands.

6. That at its regular stated meeting on August 5, 1891, a petition signed by thirteen freeholders of the town was presented to the respondent, requesting it to widen the Main street of the town, and at said meeting an alleged ordinance was introduced in and read twice by the Council.

7. At a special meeting of said Council, pursuant to a call recited in the minutes thereof, on August 12, 1891, the alleged ordinance so proposed on August 5, was adopted.

8. The said alleged ordinance adopted on August 12, 1891, was not recorded in a book provided by Council for that purpose and called "Ordinances," until August 1, 1895, and it was so recorded at that time.

9. The complainants within ten days after receiving notice of the intention to widen the street and the amount of damages allowed thereon, served written notice on the president of the Council to that effect, and within ten days after the expiration of the ten days allowed for appealings, made written application to the Honorable Ignatius C. .Grubb, Associate Resident Judge of New Castle County, for the appointment of commissioners to assess damages, under Chap. 175, Vol. 18, Laws of Delaware, and the amendments thereto, being Chap. 174, Vol. 19, which written application has never been presented to him in person, but was deposited in the office of the Prothonotary in New Castle County and by him marked filed. It was admitted that Judge Grubb was absent from the County and State from May 24, 1895, until after the filing of the bill, but that he is now, and has been for upwards of three months, within the County and State, and in good health.

10. It was admitted for the purpose of argument, that part of the premises taken for widening Main street ran along the whole front of the said two lots, a distance of 167 feet,

that there is erected on lot No. 1 a handsome and commodious mansion house where the complainants now reside, and have all their lives resided, and which has for generations been the home of complainant's ancestors; that on the land in front of said mansion and on part of the land sought to be taken are ornamental shrubbery and shade trees of many years growth, the loss of which, and the unlawful appropriation of them, would destroy the privacy, comfort and quietude of said mansion as a place of residence, which loss it would be impracticable to adequately determine, and that said appropriation would result in irreparable damages to the complainants.

11. On July 19, 1895, the complainants, through their attorneys, served written notice upon the respondent that they were trespassing upon the lands of the complainants and notified them to abstain from entering on or occupying the same, or any portion thereof, for the purpose of widening Main street, or for any other purpose.

12. Notwithstanding the said notice, the respondent continued in its occupation of the portion of the land, and threatened and intended to widen the Main street under the proceedings aforesaid.

13. The questions submitted by the case stated, were as follows:

(1) Was the alleged petition of freeholders presented to The Council of Newark on August 5th, 1891, as set forth in the agreement of facts, sufficient under the various Acts of Assembly incorporating the town of Newark?

(2) Were all the formalities and prerequisites for the adoption of an ordinance by The Council of Newark under which the said Council is attempting to appropriate the said land complied with, and was said Ordinance properly adopted?

(3) Did the failure of the Secretary of The Council of Newark to record the ordinance, under which the defendant is attempting to appropriate said land, in a book called "Ordinances" until August 1st, 1895, entitle the Complainants to maintain their Bill for an Injunction?

(4) Was the appointment, of the commission to assess the damages to the Complainants, by the Honorable Charles B. Lore, Chief Justice, according to law?

(5) Are the Complainants precluded from seeking a remedy by injunction after having applied to the Honorable Charles B. Lore, Chief Justice, for the appointment of a commission as aforesaid?

14. It was agreed that if after argument the Chancellor should be of opinion that the action of the Council of Newark in entering upon and occupying the lands described was lawful and that the complainants had not a right to maintain their bill, then a decree should be made dismissing the bill with costs. But if the Chancellor should be of opinion that the entering upon and occupation of the premises by the respondent was unlawful, and that the complainants had a right to maintain their bill, then a decree should be made perpetually restraining the Council of Newark from further entering upon and occupying the said premises, and that the respondents should pay the costs; the decree in each case to be as if heard on bill and answer.

The statute, under color of which the proceedings of the respondent were taken, was Sec. 38 of the town charter of the town of Newark, being 18 *Del. Laws, Ch.* 175, as amended by 19 *Del. Laws, Ch.* 744.

Under the said amended section, it was provided that when the Council should determine to lay out any new street etc., or to widen any street, etc., it should be their duty to notify in writing the owner of the lands through or over which the same was to go, and state the amount of damages or compensation allowed to the owner. If the owner should be dissatisfied with the amount, he had a right to appeal within ten days, by serving written notice thereof on the president of the Council, and within ten days after the expiration of the ten days allowed for appealings, the owner should make written application to the Associate Judge resident in New Castle County for the appointment of commissioners to assess

the damages. Provisions were made for the assessment of damages, and return, and for filling vacancies.

The amount of damages must be paid or tendered within a month, if the owner be a resident, but the Council had the option to pay the damages within that time and to proceed with the improvement, or, upon payment of costs only, abandon the improvement.

The first application of the complainants for a commission was made to the Chief Justice under color of an Act concerning the judiciary, 20 *Del. Laws*, 184, which provided, "That during the illness or absence from his County of any Associate Judge, the powers and duties required by any statute of this State to be exercised and performed by him in relation to * * * * * * * * * * * or the proceedings for condemnation of property to be taken or applied to any municipal or other public use, may be as fully and effectually exercised and performed in all respects by the Chief Justice, or any other Associate Judge of this State, as by the said resident Judge."

The award of damages by the commission not being satisfactory to the complainants, they declined to accept the same and, as appears from the argument, took the position that the Chief Justice had no power to act in the premises.

The case came to a hearing on the agreed statement of facts, and the agreement of counsel that it should be heard as if upon bill, answer and proofs.

*Charles B. Evans*, and *J. Harvey Whiteman*, for complainants.

The public cannot appropriate property to public use, except in the mode pointed out by the Statute, and if the authorities undertake to appropriate property in any other way, equity will restrain the act and construe the statute strictly. *Cooley, Const. Lim.*, 528–541; *Suth., Stat. Const. sec.* 387; *Mills, Em. Dom., secs.* 87; *Redfield on Railways, sec.* 72; *Dillon, Mun. Corp. sec.* 604, 612, 613; *Beach, Pub. Corp., sec.* 665; *Commissioners vs. Humphrey*, 47 *Ga.* 565; *Pierpont vs. Harrisville*, 9 *W. Va.* 215; *City of Jefferson vs. Delachaise*, 22 *La. Ann.* 26; *State vs. Jersey City*, 1 *Dutcher* 309; *Specht vs. City*

*of Detroit*, 20 *Mich.* 168; *Harbeck vs. Toledo*, 11 *O. St.* 219; *In re Buffalo*, 78 *N. Y.* 362; *Illinois Central R. R. Co. vs. Indiana & Illinois R. R. Co.*, 122 *Ill.* 473; *Trimpler vs. Bemerley*, 39 *Cal.* 490; *Chicago R. R. Co. vs. Wilts*, 116 *Ill.* 449; *C. & A. R. R. Co. vs. Smith*, 78 *Ill.* 96; *Bensley vs. Mountain Lake Water Co.*, 13 *Cal.* 306; *Nichols vs. Bridgeport*, 23 *Conn.* 189, 208; *Cincinnati vs. Coombs*, 16 *O.* 181.

The power vested in The Council of Newark to lay out and widen streets is a judicial power, and must be strictly complied with. *Dill Mun. Corp.*, *secs.* 605 & 926; *Carron vs. Martin*, 2 *Dutcher*, 594; *Welker vs. Potter*, 18 *O. St.* 85; *State vs. Newark*, 1 *Dutcher* 399; *Parks vs. Boston*, 8 *Pick.* 217.

The petition praying for the widening of Main Street was presented to the Council on August 5, 1891. At that time the law made no provision for the assessment of damages to the abutting property owners, the Council, therefore, could proceed to appropriate the property of abutting owners only by an amicable adjustment of the damages. 18 *Del. Laws* 322, *Ch.* 175 *sec.* 37; *Suth. Stat. Con. sec.* 390; *Beach, Pub. Corp.*, *sec.* 665; *Chaffee's Appeal*, 56 *Mich.* 244; *People vs. Rochester*, 50 *N. Y.* 525.

The charter was amended January 31, 1893, by an act which provided a method for the assessment of damages in such cases. 19 *Del. Laws* 1023, *ch.* 744.

Therefore the ordinance of August 12, 1891, cannot give any greater rights than were provided in the town charter at the time of its adoption.

The long delay to proceed under the petition and ordinance and the acceptance of the amendment to the charter by the Council, was an abandonment of said proceedings which cannot now be revived. *City of Madison vs. Smith*, 83 *Ind.* 502, 518; *Benseley vs. The Mountain Lake Water Co.*, 13 *Cal.* 306; *Fulton vs. The Town of Dover*, 6 *Del. Ch.* 1.

The meeting of the Council when the ordinance authorizing the widening of the street was adopted, was a special meeting held on August 12, 1891, said meeting having been called for the specific purposes set forth in the call as follows, "for the purpose of consulting in regard to the question of

damages for widening the street in front of property of Benjamin Caulk estate, also in regard to laying the curb gutter in front of Delaware College and the collection of the road tax by J. T. Dickey, County Treasurer, who is to receive the taxes Friday, August 14, 1891."

It is a well settled doctrine that if the particular purpose of a special meeting of a Town Council is stated in the call, acts of the meeting foreign to the purpose specified are invalid. 1 *Morawetz, Priv. Corp. sec.* 482; 1 *Dill. Mun. Corp.*, *sec.* 264; *Beach Pub. Corp. secs.* 271, 265; *Bergen vs. Clarkson*, 1 *Halst.* (*N. J. L.*) 352; *Machel vs. Nerison* 11 *East.* 84; *King vs. Wake*, 1 *Barnard.* 80 (8 *East.* 547); *Atlantic DeLaine Co. vs. Mason*, 5 *R. I.* 463; *Marner vs. Mower*, 11 *Vt.* 385; *Ehronfeldt's Appeal*, 101 *Pa. St.* 186; *People's Mut. Ins. Co. vs. Westcott*, 14 *Gray* 440; *Rex vs. Faversham*, 8 *Term.* 359; *Rex vs. May*, 5 *Burr.* 2682.

When a meeting of a town council is called for a special purpose, such as making ordinances, the fact should be stated in the call. *Dill. Mun. Corp.* (3 ed.) *sec.* 264; *Beach Pub. Corp. sec.* 265.

When ordinances are required to be published, this requirement is essential, and the publication must be in the designated mode. *Suth. Stat. Const, sec.* 457; 1 *Dill. Mun. Corp. sec.* 331; 1 *Beach Pub. Corp. sec.* 498; *Barnett vs. Newark*, 28 *Ill.* 62; *Higley vs. Bunce*, 10 *Conn.* 567; *State vs. Hoboken*, 38 *N. J. L.* 110; *Meyer vs. Fromm*, 108 *Ind.* 208; *Napa vs. Easterby*, 61 *Cal.* 509; *Waln vs. Philadelphia*, 99 *Pa. St.* 330; *Schwartz vs. Oshkosh*, 55 *Wis.* 490; *O'Hare vs. Town of Park River*, 1 *N. D.* 279, 47 *N. W.* 380; *National Bank of Commere vs. Granada*, 48 *Fed. Rep.* 278; s. c. *Aff.* 54 *Fed. Rep.* 100; *In re Petition of Douglass*, 46 *N. Y.* 42.

As the charter of a municipal corporation is a special act, a general law passed subsequent to the charter will not repeal the provisions of the charter, either by implication, or by a general clause repealing all acts contrary to its provisions, unless the intent of the Legislature to effect such repeal is clear. *Beach Pub. Corp., secs.* 94–96; *Dill. Mun. Corp., sec.* 87; *Beaumont vs. Wilkesbarre*, 142 *Pa. St.* 198, 21 *Atl. Rep.*

888; *State vs. Morristown*, 33 *N. J. L.* 57; *State vs. Brannin*, 23 *N. J. L.* 484; *Ottawa vs. Laselle*, 12 *Ill.* 339: *St. Louis vs. Maxwell*, 99 *Ill.* 439; *Harrisburg vs. Sheck*, 104 *Pa. St.* 53; *Commissioners of Central Park*, 5 *N. Y.* 493; *People vs. Clunie*, 70 *Cal.* 504; *Cumberland vs. Magruder*, 34 *Md.* 381; *Spruance vs. Truax*, 9 *Houst.* 129; *Hammond vs. Haines*, 25 *Md.* 541.

Where a statute provides that process shall be executed by a certain person it can be executed by no other person. *Suth. Stat. Const. sec.* 390; *Reynolds vs. Orvis*, 7 *Cow.* 269.

Where the charter expressly requires a municipality to do certain acts by ordinance, they must be so done and not by resolution or otherwise. *Dill. Mun. Corp. secs.* 309, 605; *Beach Pub. Corp. sec.* 485; *In re Phillips*, 60 *N. Y.* 16; *In re Little*, 60 *N. Y.* 343; *State vs. Bayonne*, 6 *Vroom* 335; *State vs. Patterson*, 16 *Vroom* 186; *In re Douglas*, 46 *N. Y.* 42; *Dubuque vs. Wooton*, 28 *Ia.* 571; *Patterson vs. Barnett*, 46 *N. J. L.* 62; *Cross vs. Morristown*, 18 *N. J. Eq.* 305; *Shapp vs. Spior*, 4 *Hill* 76, 85.

A constitutional provision that two-thirds of the General Assembly shall be requisite to every bill continuing, altering, or renewing any body politic or corporate is held to extend to municipal corporations. *Const. of Del., Art.* II, *sec.* 17; *Dill. Mun. Corp., sec.* 47; *Beach Pub. Corp. sec.* 43; *Purdy vs. People*, 4 *Hill* 384; *Corning vs. Green*, 23 *Barb* 33.

This Court has the jurisdiction to award the injunction prayed for; and this case in one which, according to the settled principles, requires such interposition. *Wilds vs. Layton*, 1 *Del. Ch.* 226; *Thompson vs. Lynam*, 1 *Del. Ch.* 64; *Tatum vs. Gilpin*, 1 *Del. Ch.* 13; *Fleming vs. Collins*, 2 *Del. Ch.* 230; *Montgomery vs. Robinson*, 4 *Del. Ch.* 400; *Curry vs. Jones*, 4 *Del. Ch.* 559; *Tatnall vs. Shallcross*, 4 *Del. Ch.* 634.

Where a court by law has no jurisdiction of the subject matter of a controversy, a party whose rights are sought to be affected by it is at liberty to repudiate its proceedings and refuse to be bound by them, notwitstanding that he may once have consented to its action, either by voluntarily commencing the proceeding. as plaintiff, or, as defendant, by appearing and pleading to the merits, or by any other formal or in-

formal action. This right he may avail himself of at any stage of the case, and the maxim that requires one to move promptly who would take advantage of an irregularity does not apply here, since this is not mere irregular action but a total want of power to act at all. *Cooley Const. Lim.* 393; *Black's Const. Law* 426; *Collins vs. Collins,* 37 *Pa. St.* 387; *Coffin vs. Tracy,* 3 *Cai.* 129; *Blim vs. Campbell,* 13 *Johns. Ch.* 432; *Dudley vs. Mayhew,* 3 *N. Y.* 9; *Chapman vs. Morgan,* 2 *Greene* (*Ia.*) 374; *Dix vs. Hatch,* 10 *Ia.* 380; *Ginn vs. Rogers,* 9 *Ill.* 131; *Ames vs. Boland,* 1 *Minn.* 365; *Green vs. Clawson,* 5 *Houst.* 159; *Morrison vs. Turnpike Co.* 1 *Harring.* 366; *Carey vs. Russell,* 2 *Harring.* 280.

A mere waiver can amount to no more than consent. *State vs. Bonney,* 34 *Me.* 223.

No legal right was waived by giving notice of dissatisfaction at assessment of damages and notice of appeal. *Cincinnati vs. Coombs,* 16 *O.* 181.

*Charles M. Curtis,* for respondent, considered the questions propounded in the agreement of counsel *seriatim.*

1. The petition of freeholders presented to Council on August 5, 1891, complied with every requirement of the charter of the town and was sufficient. 18 *Del. Laws.* 332, *ch.* 175, *sec.* 37. The petition is annexed to the agreed statement as exhibit "H".

2. The question whether the ordinance was legally adopted was probably not properly raised by the bill, but has been submitted for decision, in the agreed statement of facts.

The specific questions submitted involved not the subject matter of the ordinance, but the validity of the proceedings of Council with reference to its adoption. The minutes of the Council show that the ordinance in question was read twice at a stated meeting held August 5, 1891, and passed with the concurrence of a majority of the members at a subsequent meeting on August 12, 1891, This was a strict compliance with the law and requirements of the charter. 18 *Del. Laws.* 311, *sec.* 13.

The ordinance is valid, though passed at a special meeting. *Staats vs. Washington*, 45 *N. J. L.* 318; *Cutcompt vs. Utt, Mayor &c.*, 60 *Ia.* 156; *Lexington vs. Headley*, 5 *Bush. (Ky.)* 508.

The regularity of the call of both meetings is not denied, and, if in issue, the presumption is that they were regularly called. The minutes of the special meeting show that its object was indicated with sufficient accuracy to notify all the members of the matters to be considered. If notice of the object of the special meeting was required, it is sufficient if the purpose and object of the meeting can fairly be understood from the notice or warrant. 1 *Dill. Mun. Corp. sec.* 267; *School District vs. Blackeslee*, 13 *Conn.* 227.

The proceedings for condemnation of the property of the complainants were sufficient without an ordinance fixing the width of Main Street, because the width of it had already been fixed by an Act of the General Assembly passed April 7, 1881. 16 *Del. Laws* 659, *ch.* 497, *sec.* 1.

3. Although the ordinance was not in fact recorded in the ordinance book by the secretary, whose duty it was to do so, until August 1, 1895, after the proceedings for condemnation had terminated, it was valid.

The provision in the charter for recording ordinances is directory, and an ordinance is valid though not recorded. Such provisions in relation to statutes and ordinances are always held to be merely ministerial, and the failure to obey them does not invalidate the statute or ordinance. 1 *Dill Mun. Corp. sec.* 335; *Trustees of Erie Academy vs. Erie.* 31 *Pa. St.* 515; *People vs. Cole*, 70 *Cal.* 59; *Uppington vs. Oviatt*, 24 *O. St.* 232; *Stevenson vs. Bay City*, 26 *Mich.* 44; *National Bank &c. vs. Grenada*, 41 *Fed. Rep.* 87.

4. The commission issued by the Chief Justice appointing freeholders to assess the damages was valid, under the Act of April 12, 1895, 20 *Del. Laws* 184, *ch.* 118. In so far as the act operates as an amendment to the charter of the town, it does not contravene the Constitution of the United States; since it is well settled in this state that municipal corpora-

tions are revocable and subject to alteration at the pleasure of the Legislature and are not contracts within the prohibitory clause of the Constitution of the United States. *P. W. & B. R. R. Co. vs. Bowers*, 4 *Houst.* 506, 530; *Coyle vs. Atty. Gen. ex rel. McIntyre*, 7 *Houst.* 44.

The Act is not in conflict with the Constitution of the State. It is simply a general statute relating to the transfer of certain judicial power and duties from one member of the Court to another in certain emergencies, and being a remedial statute should be liberally construed.

Depositing the application for appointment of commissioners to assess damages in the office of the Prothonotary is not a compliance with the charter remedy provided for the land owner. The application must be to the Associate Judge resident in the County, in person, or it is not valid.

During the prolonged absence or illness of the Associate Judge much injustice might result if this Act is declared unconstitutional and void as amendatory of the remedies to protect the owners of property to be taken for publis purposes.

All the reasons of convenience and necessity render it important and almost essential that this Act be given its full force and scope in the present case.

Laws passed for the advancement of justice and the regulation of procedure are valid, though they operate to amend charters of existing corporations. 2 *Morawetz, Priv. Corp.* secs. 401, 1076, 1080; *Gowen vs. Penobscot R. R. Co.* 44 *Me.* 140; *Railroad Co. vs. Hecht*, 95 *U. S.* 170.

Provisions in the charter of a corporation regulating the manner of condemning land are provisions which belong to remedies against the corporation and not the grant of rights, and such provisions may be altered by the Legislature either by a general or special law. 2 *Morawetz, Priv. Corp. sec.* 1081; *Chattaroi Ry. Co. vs. Kinner*, 81 *Ky.* 221; *Mississippi Ry. Co. vs. McDonald*, 12 *Heisk*, 54; *Long's Appeal*, 87 *Pa. St.* 114.

There is no vested right to a remedy for the assessment of damages for land taken for public purposes, and the Legis-

lature may alter such remedy or substitute a new one. *Long's Appeal, supra.*

General statutes operating to change remedies under special acts are valid although not passed by the Legislature in conformity with constitutional provisions requiring certain observances as to the passage of such special acts. *Endlich on Interpretation of Statutes, sec.* 191; *Geisen vs. Heiderich,* 104 *Ill* 537; *Lehman vs. McBride,* 15 *O. St.* 573, 601; *People vs. Mahoney,* 13 *Mich.* 481, 496.

The Chief Justice has already decided the fourth question of law and his deliberate determination to appoint the freeholders, with no objection by the complainants or their counsel, makes that branch of the case *res judicata.*

5. Complainants by their application to the Chief Justice and participation in the hearing before the commissioners appointed by him, waived all objections to the regularity of the proceedings for condemnation, by their counsel.

If the statutory remedy for the assessment of damages to the land owner for taking his land is complete and he has pursued that remedy, he thereby waives all irregularities in the prior preliminary proceedings. *Mills Em. Dom.,* 117 *sec.* 88; *Pinkham vs. Chelmsford,* 109 *Mass.* 225; *Fitchburg &c. vs. B. & M. R. R.,* 3 *Cush.* 58; *Flagg vs. Worcester,* 3 *Cush.* 69; *Jordan vs. Haskell,* 63 *Me.* 193; *Del. Lack. & W. R. R. vs. Burson,* 61 *Pa. St.* 369; *Weaver's Road,* 45 *Pa. St.* 405; *Lake Erie &c. R. R. vs. City of Kokomo,* 130 *Ind.* 224, 29 *N. E.* 780; *Akin vs. Board of County Commissioners of Riley County,* 36 *Kan.* 170, 13 *Pac.* 2; *Trester vs. Missouri Pac. Ry. Co.,* 33 *Neb.* 171, 49 *N. W.* 1110; *Johnston vs. Rankin,* 70 *N. C.* 550.

The complainants have also waived the right to maintain their bill for an injunction. The allegation of irreparable damage, or loss not ascertainable in a court of law, is a necessary averment, and without it this Court has no jurisdiction. *Murphey vs. Wilmington,* 6 *Houst.* 108.

The application for commissioners to assess damages is an unanswerable and controlling admission that their dam-

ages are assessable, and that injury is not irreparable. The admission in the agreed statement of facts that damage was irreparable was made expressly in order to give jurisdiction as to the other questions raised, if the Court should consider that the contention on this point is untenable.

THE CHANCELLOR:—

A bill was filed in this cause to restrain the Council of Newark from taking a portion of complainants' land situated on Main street in the town of Newark under condemnation proceedings, from which they had already taken an appeal.

An answer was filed by the Council of Newark, but subsequently an agreement of counsel was entered into and the cause was then argued before me on a case stated.

The briefs filed by counsel cited a great number of authorities and discussed ably and with thoroughness the questions formally submitted for my decision, which I will consider *seriatim* as they were presented.

"First. Was the alleged petition of freeholders, presented to The Council of Newark on August 5, 1891, as set forth in the agreement of facts, sufficient under the various acts of Assembly incorporating the Town of Newark?"

This petition did comply in every particular with the requirements of the charter, 18 *Del. Laws* 322, *ch.* 175, *sec.* 37, which section has not been affected by any subsequent amendment.

"Second. Were all the formalities and prerequisites for the adoption of an ordinance by The Council of Newark, under which the said Council has attempted to appropriate the said land, complied with, and was such ordinance properly adopted."

Counsel for the complainants urged that this ordinance was not properly adopted because it was passed at a special meeting, the call for which did not specify the adoption of the ordinance as one of the purposes for which the meeting was called.

The charter, *sec.* 13, provides that Council shall "meet at least once in every month at such time or times and place as

it shall appoint. Special meetings may be called by the president of Council upon his own motion, or shall be called at the request of three members," It further provides that "no ordinance shall be passed without the concurrence of a majority of the members of the Council, and unless it shall have had at least two readings at a previous stated meeting or meetings."

The ordinance in question was as follows:

"Be it Ordained by the Council of Newark, that Main Street of Newark, Delaware, between the eastern boundary line thereof and the Baltimore and Philadelphia railroad tracks, shall be of the uniform width of forty feet between curb lines and that the width of the pavements on Main Street in the town of Newark shall be six feet."

This ordinance was read twice at a stated meeting held August 5, 1891, at which the petition above referred to was presented; and the call for the special meeting at which the ordinance was adopted stated, *inter alia,* that the meeting was called "for the purpose of consulting in regard to the question of damages for widening the street front of property of Benjamin Caulk estate," which is the property in dispute in this cause, and it appears from the agreed statement of facts that it is situated on that portion of Main street to which the ordinance refers.

I am of opinion, in view of the facts presented by the case stated, that it might be fairly understood from this notice that the passage of the ordinance, which had been read twice the week before, at the last regular stated meeting, was one of the purposes or objects for which the meeting was called.

This is all that is required from a notice or a warrant for a special meeting, as is laid down by Judge Dillon in his authoritative work on municipal corporations, *Vol.* 1, *sec.* 267, and the authorities are in accord upon this point.

"Third. Did the failure of the secretary of the Council of Newark to record the ordinance, under which the defendant is attempting to appropriate said land, in a book called 'Ordinances' until August 1, 1895, entitle the complainants to maintain their bill for an injunction?"

Section 16 of the charter, 18 *Del. Laws* 313, *ch.* 175, provides, *inter alia*, that "he (the secretary) shall have in his charge the Ordinances, which shall be recorded in a book or or books provided, by Council for that purpose and called 'Ordinances,' "

This is clearly directory and not a condition upon which depends the validity of the ordinance, so that the secretary's delay in recording the disputed ordinance until August 1, 1895, in no way affected its validity. 1 *Dill. Mun. Corp. sec.* 335; *Trustees of the Erie Academy vs. City of Erie,* 31 *Pa. St.* 515; *Upington vs. Oviatt,* 24 *O. St.* 232, 241.

In the cases cited by complainants' counsel, recording or publication was expressly made a condition precedent to the validity of the ordinance.

"Fourth. Was the appointment of the commissioners to assess the damages to the complainants by Honorable Charles B. Lore, Chief Justice, according to law?"

It is provided in the charter, *sec.* 38, "And if any owner or owners shall be dissatisfied with the amount of the damages or compensation allowed by said council, he, she or they may within ten days after said notice is received, appeal from the assessment of damages or compensation aforesaid by serving on the president of said council, a written notice to that effect, and said owner or owners shall with (in) ten days after the expiration of the ten days allowed for appealings, and upon ten days notice to the president aforesaid, make written application to the associate judge of the superior court, resident of New Castle County, for the appointment of commissioners to hear and determine the matter in controversy; and thereupon the associate judge aforesaid, shall issue a commission under his hand, directed to five freeholders of said county, two of whom shall be residents of said town, commanding them to assess the damages which the owner or owners of said lands through or over which said street, lane or alley is to pass."

Subsequently, April 12, 1893, a general statute was passed, 20 *Del. Laws* 184, *ch.* 118, which provided as follows:

"That during the illness or absence from his county of any associate judge the powers and duties required by any statute of this State to be exercised and performed by him in relation to the discharge of prisoners and convicts under Section 10, Chapter 133 of the Revised Code, the issue of fractional liquor licenses, the approval of assignment of liquor licenses, or the proceedings for the condemnation of property to be taken or applied to any municipal or other public use, may be as fully and effectually exercised and performed in all respects by the Chief Justice, or any other associate judge of this State, as by the said resident judge."

The complainants being dissatisfied with the amount of damages or compensation allowed by the Council of Newark took their appeal in the manner provided by section 38 of the charter of Newark, above quoted, except that the Associate Justice, Honorable Ignatius C, Grubb, being at the time absent from the county, they made their application to the Chief Justice in accordance with the provisions of the general statute quoted above.

Counsel for the complainant now urges that the Chief Justice had no jurisdiction and his appointment of freeholders to assess damages was void, inasmuch as the general statute empowering him to act in the absence of the Associate Justice was an amendment to the charter of Newark, and, therefore, void, because it does not appear to have been enacted by a two-thirds vote.

A general provision of this nature, however, cannot be considered an amendment to the charter of any municipality. It belongs to that class of acts which regulate the forms of administering justice by the Court. It affects in no other respect the proceedings for condemnation prescribed in the charter of the town of Newark, nor does it in the slightest particular alter the rights conferred upon the town by its charter.

General legislation of this character allowing one Justice of the higher courts to act in the absence of another, solely to facilitate the dispatch of business by the Courts, is univer-

sally held to be an incident of sovereignty presumed to be reserved in the enactment of all charters.

"Fifth. Are the complainants precluded from seeking a remedy by injunction after having applied to Honorable Charles B. Lore, Chief Justice, for the appointment of a commission as aforesaid?"

What I have already stated in my consideration of the preceding questions render it unnecessary to consider this last question.

There still remains to be considered one other contention which was strongly urged by complainants' counsel, although not specifically formulated as one of the questions submitted, it being urged by him that it was a defect lying at the bottom of the whole condemnation proceeding.

At the time of the adoption of the ordinance widening Main street, power to widen was expressly conferred upon the Council by *section* 37, but the power to condemn land for laying out new streets, squares, lanes or alleys, given in the following *section* 38, was not made to include the power to condemn land for the widening of streets etc., already opened. This additional power was given by the amendment to the charter passed January 31, 1893, being *chapter* 744, *Vol.* 19, *Laws of Delaware*, and it is the contention of the complainants' counsel that the Council, having no authority to condemn land for the widening of Main Street at the time of the adoption of the ordinance of August 12, 1891, the amendment of 1893, could not confer upon them the power to condemn under an ordinance which was adopted prior to its enactment.

The authorities cited by counsel in support of this contention deal with delays occurring between the different steps in condemnation proceedings, but the question here presented is quite different.

The whole power to widen Main Street possessed by the Council of Newark at the time, was exercised by its adoption of the ordinance of August 12, 1891, which had the same effect as a statute, fixing the width, until it should be amended

or repealed. Then, when the power to exercise the right of eminent domain, was subsequently conferred, the condemnation proceedings regularly instituted and carried through, were independent proceedings and not connected with the ordinance determining the width of the street, otherwise than if it had been a statute determining its width. In fact, it appears that there was such a statute, although, having found the ordinance to be regular and effective, it has not been necessary for me to consider it. 16 *Del. Laws* 659, *ch.* 497, *sec.* 1.

It follows, therefore, from the foregoing consideration of all the questions submitted and the agreed statement of facts, that the action of the Council of Newark, in entering upon and occupying the land in the statement of facts described, was lawful, and that a decree must be entered dismissing complainant's bill with costs.

Let the decree be entered accordingly.